(No. 83-CC-1916—<span style="background:black"> </span>

COMMUNITY ACTION AGENCY FOR McHENRY COUNTY,
Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed March 28, 1986.*

WEISZ & WEISZ, for Claimant.

NEIL F. HARTIGAN, Attorney General (LYNN SCHOCK,
Assistant Attorney General, of counsel), for Respondent.

MONTANA, C.J.

This is a three-count claim for reimbursement to Claimant for expenditures allegedly made by Claimant pursuant to a contract entered into by the parties wherein Claimant was to provide food services to migrant workers.

Both Claimant and Respondent filed cross-motions for summary judgment. At oral argument on those motions before the commissioner there was conceded that there are no contested issues of fact.

As to Count I, the facts are that in 1981 Respondent had been unsuccessful for two years in opening a Lake County migrant service center. In March or April of 1981 Respondent requested Claimant to open such a center in Lake County by the end of June 1981.

A licensable location was obtained for opening in June, but this location had no acceptable kitchen facilities, thus necessitating the hiring of a catering service. Respondent, through its representative, told Claimant that Quality Catering was the only catering service in the area that met licensing standards. Based on verbal approval by Respondent, Claimant contracted with Quality Catering without competitive bidding as required for such contracts.

By practice and custom, Claimant first requested reimbursement of the contested expenses of Quality Catering amounting to $5,996.00 from the Federal program involved, namely, the Federal Child Care Food Program. During the last week of April 1982, Claimant was notified by the Federal agency that the requested amount would not be reimbursed. Immediately thereafter, on May 5, 1982, Claimant submitted

vouchers to Respondent. These vouchers were delivered to Respondent 68 days after the termination or completion of the contract.

The contract provided, in pertinent part that:

"No vouchers shall be honored and paid and the Agency waivers all rights to payment if submitted later than 60 days after the end of the fiscal year or, if submitted more than 60 days following the termination or completion of the contract."

Thus, Respondent argues, Respondent is not liable because there was no competitive bidding and because the vouchers were submitted more than 60 days following the termination or completion of the contract.

Claimant argues that since Claimant received verbal approval of the noncompetitively-bid contract, verbal approval was sufficient, and further, that the delay in submitting vouchers was not due to its own fault but was induced by late notification by the Federal program that the expenses were not to be approved by them.

In the opinion of this Court, it is not necessary for us to decide whether payment should or should not be denied because the reimbursement claimed was based on a noncompetitively-bid contract, because Respondent's second defense is sufficient.

This Court is powerless to change the terms of the contract between the parties. The contract plainly requires submission of vouchers within 60 days of the completion of the contract. Vouchers were not submitted within that period of time. Claimant's reason for not following the contractual payment procedure is wholly insufficient, for the record shows nothing to have prevented Claimant from submitting vouchers to Respondent while waiting for a response from the Federal program.

Thus, because of the violation of the unambiguous terms of the contract, the Claimant waived the claims enumerated in Count I and the claim in Count I is denied.

As to Count II, Claimant's claim is for reimbursement for interest and penalty costs incurred by Claimant on late F.I.C.A. payments incurred by Claimant as a result of Respondent's failure to make timely scheduled payments to Claimant.

The facts were that claims were made for reimbursement of expenses for July, August and September of 1981, which included claims for persons who were not eligible under the program. Because of questioned eligibility, the claims for those months were not processed until eligibility verification documentation was received by the Department. An audit was completed in December 1981 on eligibility documents and a total of $8,630.95 was disallowed and deducted from the claims, leaving $5,644.00 due to Claimant, which amount was paid in January and February 1982.

Claimant argues that Respondent's failure to immediately recognize the eligibility of those persons who were eligible, and immediately pay the $5,644.00, caused the Claimant to incur interest and penalty costs on F.I.C.A. payments.

In the opinion of this Court, the delay in payment was because Claimant submitted ineligible claims and thus the delay in payment was solely Claimant's fault.

In addition, Claimant's failure to pay its F.I.C.A. payments has not been shown to have been the result of Respondent's delay in payment. Thus, assuming *arguendo* that Respondent caused a delay in payment, it does not follow that the Respondent is liable for all costs

incurred by Claimant by its own failure to pay its own bills. This failure to pay its own bills is a result of its own policy considerations and not because of any fault on the part of Respondent. Count II is also denied.

As to Count III, the Claimant claims that in October and November 1982 it mistakenly paid fringe benefits in the amount of $3,126.00 in the form of unemployment compensation from another of its funds, namely the Head Start Program funds, which payment was for the use of the migrant workers program. Claimant did not discover this mistake until an audit was made of the Head Start Program. Claimant, therefore, seeks reimbursement under the migrant workers contract for unemployment compensation money expended by it but for which it has never formally requested reimbursement under the contract between the parties.

Once again, the provisions of the contract, which require submission of vouchers within 60 days of the completion or termination of the contract, applies. The claim in Count III is one in which vouchers were never timely submitted. In fact, it was admitted during oral argument before the commissioner that vouchers have not yet been submitted. This count, being contractually stale, is denied.

Accordingly, it is hereby ordered that this entire claim be, and hereby is, denied.